A. D. KENAMOND, Judge.
On August 29, 1946, the claimant Luther Goldsboro lived on U. S. route No. 50, about three miles east of Bridgeport, in Taylor county. Some time that night three escapees from the industrial school for boys at Pruntytown (Randolph Brewster, Jack Sproles and Jack Palmer) stole a 1937 Oldsmobile four-door sedan owned by claimant, breaking the padlock on the garage in which the car was stored, and driving the car to Clarksburg, West Virginia, where it was demolished about six thirty a. m. on August 30, 1946, in a head-on collison with a bus owned by City Lines of West Virginia, Inc., in front of Victory High School.
Claimant alleges that the West Virginia board of control was negligent in permitting Randolph Brewster, Jack Sproles and Jack Palmer to escape from said industrial school; that some or all of the escapees had previously escaped therefrom and had previous to August 29, 1946 committed crimes during *188 those other escapes; that, despite all of those escapes and crimes, respondent took no additional precautions for preventing them from escaping again; and that as a direct and proximate result of the aforesaid careless, negligent and improper conduct of the respondent, the claimant suffered damages, as itemized in the petition, amounting to $880.45.
At a hearing of the case on October 24, 1950, L. Steele Trotter, of the West Virginia board of control, appeared with the official records of the industrial school, at Pruntytown, with regard to Randolph Brewster, Jack Sproles and Jack Palmer.
The record of Randolph Brewster showed that at his first commitment on July 5, 1944, at the age of twelve years, he had been charged with theft of $138.00; that on a recommitment of August 2, 1944, he had been guilty of breaking and entering and auto theft; that he was returned on November 4, 1945, on violation of his parole of September 1, 1945, for stealing a car; and that on his sixth return “Randolph stated he broke and entered three stores in Logan, West Virginia, and stole an auto.”
Between the time of commitment to Pruntytown on October 12, 1945, at the age of thirteen, for breaking, entering and theft, and the time of his escape resulting in theft of the Luther Goldsboro automobile, Jack Sproles had escaped only once, and that during the immediately preceding month, on July 10, 1946.
The third escapee in this case, Jack Palmer, was committed to' Pruntytown on May 5, 1942, for breaking and entering and auto theft. His first escape on July 1, 1942, was of short duration, as he was caught two miles from the institution and returned. His second escape, on November 3, 1942, was in company with three other boys, all four going out the window and down the fire escape and proceeding to burn down a haystack and break into a house and take some food. He was returned from a third escape on December 11, 1942. His participation *189 in the theft of the Luther Goldsboro automobile was recited under “Statement of escape upon fifth return.”
In the case of Coy v. State Board of Control, 3 Ct. Claims (W. Va.) 49, the West Virginia industrial school for boys at Pruntytown was held to be a penal institution within the meaning of section 14 of the act creating the court of claims. In this opinion the court was supported by a brief filed by counsel for the state maintaining “that said school is, in truth and fact, a penal institution.”
In the case under consideration the relation of the state agency involved to the escapees can thus not be regarded as that of a father to a minor son who does some tortious act as an independent design of his own. Instead, we must consider the position of the state agency to be like that of a sheriff under duty bound to keep in custody those lawfully committed to him, said sheriff being liable when he voluntarily permits the escape of those committed. (19 American Jurisprudence 373.)
That the claimant suffered damages amounting to S880.45, as itemized in the petition, and at the hands of the escapees, was conceded by the respondent. The question of culpability on the part of the West Virginia board of control is to be determined by the court.
That the escapees had a bad record of escapes and thefts was fully shown, and altogether they had participated on four occasions in the theft of an automobile before they escaped from the lawns of the Pruntytown institution and stole and wrecked the Goldsboro automobile. That it was foreseeable and to be anticipated that some such damage would result from the escape of Randolph Brewster, Jack Sproles and Jack Palmer cannot he denied. We are of the opinion that, those in charge of the institution at Pruntytown did heedlessly and consciously make the escape of these boys on August. 29. 194l’>, easily possible, with results to be anticipated, in that these boys were given the liberty of the fields and lawns and in a group *190 of fifteen to twenty-five boys all under the surveillance of only one guard or some older boy powerless to prevent escape. The circumstances surrounding their commitment and confinement were such as to make the escapees in question objects of special restraint. Lack of discipline and control, in our opinion, brought about the commission of the tort, namely the theft and wrecking of Luther Goldsboro’s automobile by the three escapees.
Respondent in the case granted that escape was made easily possible for the three boys. Lack of discipline and control calculated to prevent commission of the tort was explained, if not justified, as a matter of policy in line with modern trends in institutional attempts to reform and rehabilitate wayward, incorrigible or vicious youths. Respondent stated that the policy had proved advantageous in efforts to make normal citizens of a high percentage of the boys at Pruntytown, that “we figure if we can save twenty boys by letting two escape under such a system, that is well worthwhile, regardless of what the boys do when they escape.” (r. p. 22.)
Saving the “twenty boys” is undoubtedly a noble purpose and “well worthwhile,” but what can be said of the resulting loss and injury of property of a private citizen incurred by a few escapees with a record for theft? Is a private citizen to have imposed upon him the obligation to make such a substantial private contribution as that involved in this case to the reformation of the “twenty boys” who profit from the modern policy? We believe the intent and purpose of the act creating the court of claims is to give answer in the negative. The great and sovereign state of West Virginia has been not only magnanimous in providing for the rehabilitation of delinquent youth (nearly a quarter of a million dollars per year at Pruntytown), but has also shown grace in repeatedly recognizing a moral obligation.
In the recent case of Price v. Sims, 58 SE 2d 659, the Supreme Court of Appeals said:
*191 “Moral obligation of state, declared by legislature to exist in favor of claimant for negligent injury to his property, will be sustained, and a legislative appropriation of public funds for its payment will be upheld, when conduct of agents or employees of state which proximately cause injury is such as would be judicially held to constitute negligence in an action for damages between private persons.”
Some of the best legalistic minds have differed as to the liability of the state for a claim such as is involved in this case without a statute specifically making it so. However, we have noted the opinion of .the Supreme Court of Appeals in the related case of State ex rel. Davis Trust Company v. Sims, Auditor, 130 W. Va. 638:
“The doctrine which gives rise to a moral obligation of the state, in any particular instance, is not rendered inoperative by, and is not incompatible with, the principle which recognizes the immunity of the State from suit, or the principle which denies the existence of a cause of action against it for the negligence of its officers, agents or employees. It rests upon consideration of an entirely different and independent character. If the State were subject to suit or action, or a cause of action existed against it for the negligence of its officers, agents or employees, while engaged in the discharge of a governmental function or in other activity or conduct; or if there were a legal liability upon the State, or any legally recognized remedy for such against it, there would be no occasion for one aggrieved or injured to seek from the State, upon the basis of a moral obligation, the relief which he is denied by positive law but to which he would be entitled if, in the identical situation, an obligation or duty would be judicially recognized in cases between private persons.”
In consideration of all the facts, and under the circumstances in this case, we favor an award and accordingly recommend that the claimant, Luther Goldsboro, be compensated in the amount of eight hundred eighty dollars and forty-five cents ($880.45).